UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

EXCLUSIVE GROUP HOLDINGS, INC.,

       Plaintiff,

v.                   Case No: 2:22-cv-474-JES-NPM

NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PENNSYLVANIA, BBCG CLAIMS SERVICES, AIG CLAIMS, INC., and AMERICAN INTERNATIONAL GROUP, INC.,

       Defendants.

_____

## OPINION AND ORDER

This matter comes before the Court on Defendants' Objections to Magistrate Judge's Order Dated July 31, 2023. (Doc. #108). Plaintiff filed an Opposition. (Doc. #109). For the reasons set forth below, the objections are sustained in part and overruled in part. After *de novo* review, the underlying Motion for leave to file a Third Amended Complaint (Doc. #92) is granted in part, a modified Third Amended Complaint is allowed, and the case is remanded to state court for further proceedings.

**I.**

This case was originally filed in state court and was properly removed to federal court. After removal, plaintiff was permitted, without objection, to file a Second Amended Complaint (SAC) (Doc. #79) setting forth ten state-law claims. (Doc. #77.) In the SAC,

plaintiff Exclusive Group Holdings, Inc. (Exclusive or Plaintiff) sues its insurer (National Union Fire Insurance Company of Pittsburgh Pennsylvania (NUFIC)), and three others: AIG Claims, Inc. (AIG Claims), BBCG Claims Services (BBCG)[1], and AIG Property Casualty, Inc (AIG) (collectively Defendants).  Defendant NUFIC issued two insurance policies to Exclusive.  The three additional defendants allegedly caused NUFIC to wrongfully deny Exclusive's sixteen insurance claims.  AIG Claims, a third-party claims administrator, and BBCG, a third-party adjusting firm, were engaged by NUFIC to help evaluate Exclusive's claims. AIG is a large insurance underwriter, and both NUFIC and AIG Claims are wholly owned subsidiaries of AIG.  Federal jurisdiction is premised on complete diversity of citizenship.  (Doc. #79, ¶ 12.)

On March 23, 2023, Exclusive filed a motion (Doc. #92) seeking leave to file a third amended complaint adding J.S. Held, Inc. (J.S. Held) as an additional defendant and adding claims against it.  J.S. Held is a corporate investigation firm engaged by counsel for NUFIC to investigate portions of the insurance claims filed by Exclusive.  As it turns out, J.S. Held is a non-diverse entity whose presence as a party-defendant would destroy federal diversity jurisdiction.  Because of this, remand to state court

---

[1] The Court recognizes that defendants assert BBCG is a mis-named party (Doc. #108, p. 1 n.1), but this issue need not be resolved here.

would be mandatory if the motion was granted. 28 U.S.C. §
1447(e)[2]. See also Ingram v. CSX Transp., Inc., 146 F.3d 858, 862
(11th Cir. 1998).

On July 31, 2023, the Magistrate Judge issued an Order
Granting Leave to Add Party and Remanding Case to State Court (Doc.
#103) (the Order). The Order granted leave to file the Third
Amended Complaint which added three state law claims against J.S.
Held as a named defendant. Because complete diversity of
citizenship was no longer present, the Order also remanded the
case to state court. The Order gave the parties fourteen days to
file objections, noting this was the time allowed for objections
to a non-dispositive order under Fed. R. Cv. P. 72(a). If no
objection was filed, the case would be remanded to state court
pursuant to the Order. (Doc. #103 at 14-15.)

All Defendants timely filed the following four objections to
the Magistrate Judge's Order: (1) the Magistrate Judge had no
authority to remand the case in an order, but instead was required
to issue a report and recommendation (R&R) to the district judge
for *de novo* review; (2) the Magistrate Judge erred by relying
almost exclusively on the fraudulent joinder test as the applicable
standard to determine whether to grant the motion to amend; (3)

---

[2] "If after removal the plaintiff seeks to join additional
defendants whose joinder would destroy subject matter
jurisdiction, the court may deny joinder, or permit joinder and
remand the action to the State court." 28 U.S.C. § 1447(e).

the Magistrate Judge erred in finding that a Florida court would conceivably allow the claims against J.S. Held to proceed; and (4) the Magistrate Judge misapplied some of the appropriate factors in weighing whether to grant leave to file the Third Amended Complaint. (Doc. # 108.)  Plaintiff responded that the Magistrate Judge got it right in all respects. (Doc. # 109.)

## II.

As summarized above, the Magistrate Judge issued an "Order" which (1) allowed the filing of a Third Amended Complaint (TAC) that would destroy the court's subject matter jurisdiction by adding a non-diverse defendant, and (2) remanded the case to the state court from which it had been removed.  The Magistrate Judge then essentially stayed the Order to allow the filing of objections.  The Magistrate Judge reasoned that "[b]ecause a motion to remand does not address the merits of the case but merely changes the forum . . . it is a non-dispositive matter that does not require a report and recommendation." (Doc. #103, p. 14, n.10) (quoting Lockhart v. Greyhound Lines, Inc., No. 2:22-CV-473-SPC-KCD, 2023 WL 155279, at *5 n.3 (M.D. Fla. Jan. 11, 2023) (Dudek, M.J.)).

Defendants essentially assert that, in the circumstances of this case, a magistrate judge has no authority to remand a case to state court by an order.  Instead, defendants argue, a magistrate judge is required to issue an R&R to a district judge who, as an

- 4 -

Article III judge, has the authority to remand the case to state court after *de* novo review.  (See Doc. #108, pp. 9-10.)

This issue goes to the legal authority of a magistrate judge: Does a magistrate judge have the authority to issue an order (as opposed to an R&R) which (1) grants a motion to amend a complaint when the amendment will destroy federal diversity jurisdiction and require remand, and (2) remands the case to state court based upon the resulting lack of subject matter jurisdiction?  This is a question of law and is therefore subject to *de novo* review. United States v. Shamsid-Deen, 61 F.4th 935, 944-45 (11th Cir. 2023).

**A.**

The basics are well-established.  Federal courts are created pursuant to Article III of the United States Constitution.  U.S. Const. art. III.  Article III, § 1, of the Constitution provides that "[t]he judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish."  Congress in turn established the one Supreme Court, 28 U.S.C. §§ 1-6, and various Courts of Appeal, 28 U.S.C. §§ 41-49, and District Courts, 28 U.S.C. §§ 81-144, composed of judges who enjoy the protections of Article III: life tenure and pay that cannot be diminished. Congress later authorized district courts to appoint magistrate judges to assist Article III courts in their work.  28 U.S.C. §

631(a); see also Wellness Intern. Network, Ltd. v. Sharif, 575 U.S. 665, 677-678 (2015).

While district courts may appoint magistrate judges, Congress has restricted the power and authority of such magistrate judges. "Magistrate judges do not share the privileges or exercise the authority of judges appointed under Article III of the United States Constitution; rather, magistrate judges draw their authority entirely from an exercise of Congressional power under Article I of the Constitution." Thomas v. Whitworth, 136 F.3d 756, 758 (11th Cir. 1998). "The jurisdiction and duties of federal magistrate judges are outlined principally in [28 U.S.C. § 636]." Id. See, e.g., 28 U.S.C. § 636(a)(1)-(5), § 636(b)(1)-(4), § 636(c)(1)-(5).

> It is clear, however, that the Article III judge must retain final decision-making authority. See [United States v. Raddatz, 447 U.S. 667, 681-82 (1980)]. The district court must retain "total control and jurisdiction" of the entire process if it refers dispositive motions to a magistrate judge for recommendation. Thomas v. Arn, 474 U.S. 140, 153, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985) (quoting Raddatz, 447 U.S. at 681, 100 S. Ct. at 2415).

Williams v. McNeil, 557 F.3d 1287, 1291 (11th Cir. 2009).

Title 28 U.S.C. § 636(b)(1)(A) provides that a district court judge may designate a magistrate to "hear and determine" any civil pretrial matter pending before the court, except certain specified motions:

> Notwithstanding any provision of law to the contrary –
>
> (A) a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action.

28 U.S.C. § 636(b)(1)(A).[3] A district judge may "reconsider" such determinations by a magistrate judge if the magistrate judge's order is shown to be "clearly erroneous or contrary to law." Id. Although the statute provides no time limit for seeking such reconsideration, a party must file an objection to such an order within fourteen days of receiving a copy of the order. Fed. R. Civ. P. 72(a).

Additionally, a district court may designate a magistrate judge to conduct hearings and submit proposed findings and recommendations concerning a variety of motions, including those which the magistrate judge may not "hear and determine":

---

[3] The original 1968 version of the Federal Magistrate Act allowed magistrates to be assigned "such additional duties as are not inconsistent with the Constitution and laws of the United States," including "assistance to a district judge in the conduct of pretrial or discovery proceedings in civil or criminal actions." 28 U.S.C. § 636(b)(2) (1968). This was amended in 1976 to allow designation of a magistrate to "hear and determine any pretrial matter pending before the court, except . . ." for eight types of matters. See 28 U.S.C. § 636(b)(1)(A) (1976).

> (B) a judge may also designate a magistrate
> judge to conduct hearings, including
> evidentiary hearings, and to submit to a judge
> of the court proposed findings of fact and
> recommendations for the disposition, by a
> judge of the court, of any motion excepted in
> subparagraph (A)....

28 U.S.C. § 636(b)(1)(B); see also Williams, 557 F.3d at 1291-92.

As to these types of matters, the magistrate judge must file "proposed findings and recommendations" to which a party may file written objections. 28 U.S.C. § 636(b)(1). A party must file an objection within fourteen days of being served with a copy of the R&R. Fed. R. Civ. P. 72(b)(2). If objections are filed, "[a] judge of the court shall make a _de novo_ determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); see also Fed. R. Civ. P. 72(b)(3).

By Local Rule, the district judges of the Middle District of Florida have provided that a magistrate judge "can exercise the maximum authority and perform any duty permitted by the Constitution and other laws of the United States." M.D. Fla. R. 1.02(a). In the Administrative Order required by Local Rule 1.02(b), the Chief Judge has set forth the specifics of this authority in some detail. See In re: Authority of United States Magistrate Judges in the Middle District of Florida, Case No. 8:20-mc-00100-SDM, Doc. #3 (M.D. Fla.) (the Administrative Order). As

to pretrial motions in civil cases, the Administrative Order states:

> Absent a stipulation by all affected parties, however, a magistrate judge may not appoint a receiver, enter an injunctive order, enter an order dismissing or permitting maintenance of a class action or collective action, grant in whole or in part a motion for judgment on the pleadings or for summary judgment, enter an order of involuntary dismissal, or enter any other final order or judgment that would be appealable if entered by a district judge, but a magistrate judge may file a report and recommendation concerning these matters.

(Id. at p. 4, ¶ (e)(1)).

### B.

The Eleventh Circuit has not published a decision addressing whether a magistrate judge may "hear and determine" by order a motion to amend which requires a mandatory remand pursuant to 28 U.S.C. § 1447(e) if granted. The Eleventh Circuit has held, however, that 28 U.S.C. § 636(b)(1)(A) authorizes magistrate judges to "hear and determine" a pretrial matter which is not identified in or analogous to the specific statutory exceptions. United States v. Schultz, 565 F.3d 1353, 1357 (11th Cir. 2009). Neither a remand to state court nor an analogous matter is included in the excepted matters identified in § 636(b)(1)(A) which cannot be heard and decided by a magistrate judge.

The Administrative Order does not allow a magistrate judge to "enter any other final order or judgment that would be appealable if entered by a district judge...." Administrative Order, p. 4,

¶ (e)(1).  As a result, some remand orders may be entered by a magistrate judge (because such orders are not appealable), while other remand orders may not be entered by a magistrate judge (because such orders are appealable).[4]  The type of remand involved in this case is not reviewable, and therefore is within the matters authorized by the Administrative Order to be heard and determined by a magistrate judge by order.

Although motions to remand are not included in the list of excepted motions in § 636(b)(1)(A), and this type of remand order is not contrary to the Administrative Order, every court of appeals to consider the question has held that remand to state court should be treated as a matter which may not be resolved by a magistrate judge by order.  See Davidson v. Georgia-Pac., L.L.C., 819 F.3d 758, 762-65 (5th Cir. 2016); Flam v. Flam, 788 F.3d 1043, 1045-47 (9th Cir. 2015); Williams v. Beemiller, Inc., 527 F.3d 259, 266 (2d Cir. 2008); Vogel v. U.S. Office Prods. Co., 258 F.3d 509,

---

[4] Only remand orders issued under 28 U.S.C. § 1447(c) are immune from review under § 1447(d). MSP Recovery Claims, Series LLC v. Hanover Ins. Co., 995 F.3d 1289, 1294 (11th Cir. 2021); New v. Sports & Recreation, Inc., 114 F.3d 1092, 1095-96 (11th Cir. 1997). Remands for which review is barred under § 1447(c) include remands based on lack of subject matter jurisdiction. Powerex Corp. v. Reliant Energy Services Inc., 551 U.S. 224 (2007); Whole Health Chiropractic & Wellness, Inc. v. Humana Med. Plan, Inc., 254 F.3d 1317, 1319 (11th Cir. 2001).  When a district court remands a case to state court for lack of subject matter jurisdiction, it cannot even review its own decision by entertaining a motion for reconsideration. Shipley v. Helping Hands Therapy, 996 F.3d 1157, 1159-60 (11th Cir. 2021); Bender v. Mazda Motor Corp., 657 F.3d 1200, 1204 (11th Cir. 2011); Harris v. Blue Cross/Blue Shield of Ala., Inc., 951 F.2d 325, 330 (11th Cir. 1992).

516-17 (6th Cir. 2001); <u>First Union Mortg. Corp. v. Smith</u>, 229
F.3d 992, 995-96 (10th Cir. 2000); <u>In re U.S. Healthcare</u>, 159 F.3d
142, 145-46 (3d Cir. 1998).  The undersigned agrees with the
reasoning of these cases, particularly the Fifth Circuit:

> Allowing magistrate judges to enter remand
> orders at a minimum approaches the
> constitutional line because "a remand order is
> dispositive insofar as proceedings in the
> federal court are concerned" and thus is "the
> functional equivalent of an order of
> dismissal." [] Treating motions to remand as
> nondispositive would create a situation in
> which an Article III judge might never
> exercise *de novo* review of a case during its
> entire federal lifespan. And although a remand
> order is a final disposition only of the
> jurisdictional question, a merits
> determination is not a necessary feature of a
> "dispositive" matter as the statute labels
> requests for preliminary injunctions and class
> certification as dispositive. 28 U.S.C. §
> 636(b)(1)(A).
>
> … Additionally, an order of remand issued by
> a magistrate judge "is not reviewable on
> appeal or otherwise." 28 U.S.C. § 1447(d). Yet
> the statute and rule governing magistrate
> judge rulings on nondispositive matters
> provides for an appeal to the district court
> under the "clearly erroneous or contrary to
> law" standard. 28 U.S.C. § 636(b)(1)(A); Fed.
> R. Civ. P. 72(a). Classifying motions to
> remand as dispositive matters on which
> magistrate judges may enter recommendations
> but not orders of remand avoids a potential
> collision between these review provisions. It
> also avoids a timing problem that would result
> even if the magistrate-specific review
> provisions govern a magistrate judge's entry
> of a remand order: absent a stay, a remand
> order sends the case back to state court and
> deprives the federal court of jurisdiction
> that would allow for district court review. 28
> U.S.C. § 1447(c) [] <u>Dahiya v. Talmidge Int'l,</u>

> Ltd., 371 F.3d 207, 208 (5th Cir. 2004)
> (concluding that district court's remand order
> deprived the court of appeals of further
> federal jurisdiction).[]
>
> We therefore join the uniform view of the
> courts of appeals that have considered this
> question and hold that a motion to remand is
> a dispositive matter on which a magistrate
> judge should enter a recommendation to the
> district court subject to *de novo* review.

Davidson, 819 F.3d at 763-65 (5th Cir. 2016) (footnote omitted).

The instant case is an example of how allowing a magistrate judge to remand a case by order either deprives the litigants of the decision-making and control of an Article III judge, or requires the court to violate a statute by reviewing actions that are unreviewable.  The Magistrate Judge lessened the Article III concerns by essentially staying his Order to provide the opportunity to file objections.  But if the Magistrate Judge's Order was really an order, it was effective when entered and cannot be reviewed, even by the magistrate judge himself.  See 28 U.S.C. § 1447(d).

Accordingly, the Court sustains Defendants' objection, finds that the Magistrate Judge did not have the authority to remand this case to state court by order, and therefore had no authority to grant a motion to amend which would require such a remand.  The Court will therefore treat the Magistrate Judge's Order as a report and recommendation and address the other objections where appropriate.

### III.

Defendants object that the Magistrate Judge "applied the incorrect standards for evaluating remand under 28 U.S.C. § 1447(e)." (Doc. #108, p. 10.) Defendants argue that the Magistrate Judge "expressly imported" the fraudulent joinder test, which was allowed to "supplant and overrule" the applicable multi-factor standard. (Id. at 10-11.) Defendants further argue that the fraudulent joinder test is "highly deferential to plaintiffs," while the proper standard is "deferential to defendants." (Id. at 11-12.)

The Court reviews this objection under a *de novo* standard for two reasons: a *de* novo standard of review is required pursuant to 28 U.S.C. § 636(b)(1), and the objection raises an issue of law, which are reviewed *de novo*. Shamsid-Deen, 61 F.4th at 944-45.

Resolution of a motion to amend a complaint is a matter within the discretion of the court. Johnson v. Lewis, 83 F.4th 1319, 1331 (11th Cir. 2023). This discretion is generally governed by the liberal standard set forth in Fed. R. Civ. P. 15(a)(2), which requires a court to "freely give leave [to amend] when justice so requires." Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001). Even under this usual standard, however, a motion to amend may be denied "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments;

(2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." <u>Garcia v. Chiquita Brands Int'l, Inc.</u>, 48 F.4th 1202, 1220 (11th Cir. 2022) (quoting <u>Bryant</u> at 1163).

"Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant." <u>Cockrell v. Sparks</u>, 510 F.3d 1307, 1310 (11th Cir. 2007) (citation omitted).   A finding of futility is a "conclusion that as a matter of law an amended complaint would necessarily fail." <u>In re Gaddy</u>, 977 F.3d 1051, 1056 (11th Cir. 2020) (citation omitted).   <u>See also</u> <u>Greene v. Well Care HMO, Inc.</u>, 778 So. 2d 1037, 1041-42 (Fla. 4th DCA 2001).

A motion to amend to add a defendant whose joinder would destroy diversity and deprive the court of subject matter jurisdiction is also addressed in the discretion of the court. <u>Ingram</u>, 146 F.3d at 862.   In such circumstances, however, non-binding decisions[5] in the Eleventh Circuit direct district courts to "more closely scrutinize the pleading and be hesitant to allow the new non-diverse defendant to join." <u>Reyes v. BJ's Restaurants, Inc.</u>, 774 F. App'x 514, 516-17 (11th Cir. 2019) (citing <u>Hensgens v. Deere & Co.</u>, 833 F.2d 1179, 1182 (5th Cir.

---

[5] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." <u>Bonilla v. Baker Concrete Const., Inc.</u>, 487 F.3d 1340, 1345 n.7 (11th Cir. 2007).

1987)).  Reyes instructed that "[i]n so scrutinizing the pleading, the district court should use its discretion in deciding whether to allow that party to be added by balancing 'the defendant's interests in maintaining the federal forum with the competing interests of not having parallel lawsuits.'" Id. at 517 (quoting Hensgens, 833 F.2d at 1182).  The equitable balance is to be guided by four non-exclusive factors: (1) plaintiff's motive for seeking joinder; (2) the timeliness of the request to amend; (3) whether the plaintiff will be significantly injured if amendment is not allowed; and (4) any other relevant equitable considerations. Id. See also Hickerson v. Enter. Leasing Co. of Georgia, LLC, 818 F. App'x 880, 885 (11th Cir. 2020); Dever v. Family Dollar Stores of Georgia, LLC, 755 F. App'x 866, 869-70 (11th Cir. 2018).  The Court finds these non-published decisions persuasive.

    The Court also finds that traditional principles concerning fraudulent joinder may be considered in deciding a motion to amend in the circumstances of this case.  As relevant to this case, fraudulent joinder requires a showing by clear and convincing evidence that there is no possibility the plaintiff can establish a cause of action against the non-diverse defendant.  Stillwell v. Allstate Ins. Co., 663 F.3d 1329, 1332 (11th Cir. 2011).  "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper

and remand the case to state court." Stillwell, 663 F.3d at 1333 (citations omitted).  As Defendants recognize, the fraudulent joinder test can be "considered by courts as a supplement to the Hensgens analysis."  (Doc. #108, p. 4.)

The legal standard employed by the Magistrate Judge is fully consistent with the standard set forth above, albeit stated more succinctly.  The Magistrate Judge started with the applicable statute, 28 U.S.C. § 1447(e); found that the decision on whether to allow amendment was a matter within the discretion of the court; found that in the context of the case the court was required to scrutinize the motion more closely than under Rule 15; and, without citing Hensgens, identified the same four factors to consider under § 1447(e) as set forth in Hensgens.  See Doc. #103, pp. 3-4. Defendants' objection that the Magistrate Judge used the wrong legal standard is therefore overruled.

**IV.**

Defendants' remaining objections relate to the application of the legal standards to the facts of this case.  The Court reviews these objections de novo.  28 U.S.C. § 636(b)(1).  Application of the legal standards to this case first requires a more detailed examination of the record.

On June 25, 2022, Exclusive filed suit in a Florida state court against NUFIC "and Doe Corporations 1-7."  The "identity and location" of the Doe Corporations "could not be ascertained despite

the exercise of due diligence," but were "believed to be related insurance or insurance service companies who handled EXCLUSIVE'S claims." (Doc. #4, ¶¶ 8, 11.)   The Complaint further asserted "[o]n information and belief," that at least some of the involved underwriters and adjusters "are employees, agents, or representatives of one of the Doe Corporations 1-7...." (Id. at ¶ 118.)   The original Complaint alleged claims against NUFIC for a declaratory judgment, for breach of contract, and statutory bad faith pursuant to Fla. Stat. § 624.155.   (Id.)   On August 5, 2022, NUFIC properly removed the case to federal court based on diversity jurisdiction.   (Doc. #1.)

On August 25, 2022, Exclusive filed its First Amended Complaint (Doc. #15), which removed the bad faith claim against NUFIC and added claims of tortious interference and negligence against new defendants BBCG, AIG Claims, and AIG.   NUFIC filed an Answer and Affirmative Defenses (Doc. #27), while the new defendants filed motions to dismiss (Docs. #34, 47).

On October 27, 2022, the Defendants provided Exclusive with initial disclosures identifying individuals likely to have discoverable information, including:

- 17 -

| Peter Pender-Cudlip, J.S. Held (formerly GPW+ Co Ltd.) | Office 521, Level 5, Standard Chartered Building, Dubai, UAE Peter.Pender-Cudlip@jsheld.com +971 4 881 3199 | Mr. Pender-Cudlip has information regarding the evaluation of Plaintiff's alleged buyers and other counterparties in the claimed transactions. |
|---|---|---|
| Paola Tenconi, J.S. Held (formerly GPW+ Co Ltd.) | Office 521, Level 5, Standard Chartered Building, Dubai, UAE Paola.Tenconi@jsheld.com +971 4 881 3199 | Ms. Tenconi has information regarding the evaluation of Plaintiff's alleged buyers and other counterparties in the claimed transactions. |

(Doc. #92-23, p. 4.)

When discussing possible deadlines to amend pleadings at a scheduling conference on November 2, 2022, the Magistrate Judge and Exclusive's counsel had the following exchange:

> The Court: Is there anything right now? Is there like an entity or a claim that you're currently, you know, entertaining possibly adding?
>
> Exclusive's counsel: I don't know. There are some new entities that came out in the initial disclosures from the other side, some entities based in Dubai.

(Doc. #63, p. 30.)

On November 30, 2022, Exclusive served a document subpoena on J.S. Held. On December 14, 2022, J.S. Held acknowledged receipt and explained its specific role:

> GPW (Middle East) Limited, an entity acquired by J.S. Held in April 2022, was engaged by [Hastings], who NUFIC and AIG Claims, Inc. engaged to provide legal advice regarding the existence and scope of coverage for the 16

insurance claims (the "Claims") that Plaintiff submitted under two trade credit insurance policies issued by NUFIC (the "NUFIC Policies") to Plaintiff. GPW's activities, which consisted of conducting an investigation into Plaintiff's alleged buyers in the wholesale telecommunications industry (the "Buyers") that Plaintiff named in the Claims, were directed by NUFIC's Outside Counsel for purposes of identifying and providing information to NUFIC's Outside Counsel, NUFIC, and AIG Claims, Inc. and to assist NUFIC's Outside Counsel in providing legal advice to NUFIC and AIG Claims, Inc. (who at all times acted as NUFIC's authorized third-party claims administrator). In this capacity, and under the direction of NUFIC's Outside Counsel, GPW researched, investigated, obtained and otherwise collected information regarding the Buyers and other counterparties involved in Plaintiff's alleged transactions with the Buyers that formed the underlying basis for its Claims. As part of its investigation, GPW provided NUFIC's Outside Counsel with its mental impressions regarding the information it collected and communicated to NUFIC's Outside Counsel, NUFIC, and AIG Claims, Inc. regarding its investigation and the findings derived therefrom.

(Doc. #92-25, p. 2.)

On January 6, 2023, plaintiff filed a Second Amended Complaint (Doc. #79.)  This mooted the pending motions to dismiss. (Doc. #80.)  NUFIC filed an Answer and Affirmative Defenses (Doc. #83) and a Motion to Strike Allegations of, and Request for Extra-Contractual Consequential Damages (Doc. #84), and the other defendants filed motions to dismiss (Docs. ## 85, 86).  The documents subpoenaed from J.S. Held were produced on January 30, 2023.  (Doc. #103, p. 6.)

On March 1, 2023, Exclusive filed an _Unopposed_ Motion for Leave to File a Third Amended Complaint and Add a Party.  (Doc. #89.)  Among other things, Exclusive sought to add J.S. Held as a

defendant and asserted that its joinder was "not [previously] possible until the production of documents by J.S. Held on January 30, 2023 in response to a subpoena served by [Exclusive] on J.S. Held on November 30, 2022." (Doc. #89 at ¶ 10.) The Magistrate Judge, recognizing that Exclusive never mentioned J.S. Held's citizenship, denied Exclusive's motion without prejudice for "fail[ure] to show that J.S. Held would not destroy diversity...." (Doc. #91, pp. 1-2.)  Exclusive was afforded the opportunity to "renew its motion within fourteen days of th[e] order." (Id. at p. 2.)

The parties conferred and realized J.S. Held was a non-diverse entity. (See Doc. #92-26.)  On March 23, 2023, Exclusive re-filed a motion for leave to file a TAC, seeking to add J.S. Held as a defendant and remand the case to state court because J.S. Held's presence as a defendant would destroy diversity jurisdiction. (Doc. #92.)  This time, defendants opposed the motion.  (Doc. #93.)  The Magistrate Judge's Order (deemed to be a R&R) granting the motion is now before the Court on Defendants' objections.

Defendants assert that the Magistrate Judge made several errors in his application of the factors set forth in Hensgens. (Doc. #108, pp. 4, 12-20.)  The Court applies the Hensgens standard de novo, addressing the specific objections where appropriate.

**(1)   Purpose of Amendment**

The first factor to consider is Plaintiff's motive for seeking the amendment to add J.S. Held as a defendant.  <u>Hensgens</u>, 833 F.2d at 1182.  Defendants asserted before the magistrate judge "that the purpose of Plaintiff's Motion is to eliminate federal jurisdiction" (Doc. #93, p.2), and continues to take that position here.  (Doc. #108, p. 5) ("[T]he Remand Order misapplies the *Hensgens* factors relating to Plaintiff's motives....").

The original Complaint filed in state court made specific reference to Doe Corporations whose identity had not been determined.  This Complaint was removed to federal court on August 5, 2022.  Exclusive learned of J.S. Held and its role through post-removal discovery in federal court.  Exclusive first learned of J.S. Held's existence on or about October 27, 2022, and did not meaningfully know its specific involvement until subpoenaed documents were produced on January 30, 2023. (Docs. #92, p. 12; Doc. #108, p. 23.)

The record clearly establishes that Exclusive sought to add J.S. Held as a defendant before realizing it was a non-diverse entity.  Exclusive's first motion to file a TAC (Doc. #89) did not recognize any potential jurisdictional issues and it was unopposed. It was not until the Magistrate Judge questioned J.S. Held's citizenship that the parties conferred and realized federal jurisdiction was implicated by the motion.  The Court finds that

plaintiff's motive in adding J.S. Held was to proceed against one of the recently identified Doe Corporations, not to destroy federal diversity jurisdiction.   Thus, the Court agrees with the finding of the Magistrate Judge that the purpose for the amendment was not concerned with avoiding federal jurisdiction.   (Doc. #103, pp. 4-5.)   Defendants' objection is therefore overruled, and this factor weighs in favor of amendment and remand.

**(2)   Timeliness of Amendment/Dilatory Tactics**

The second factor to consider is the timelines of the amendment and any dilatory tactics by Plaintiff in its efforts to add J.S. Held as a defendant.   Hensgens, 833 F.2d at 1182. Defendants accuse Plaintiff of engaging in "dilatory tactics" to destroy federal jurisdiction. (Doc. #108, p. 22.)

"A plaintiff is dilatory in adding a non-diverse party when the plaintiff waits an unreasonable amount of time before asking for an amendment, despite having been able to ascertain the party's role in the suit all along." Hickerson, 818 F. App'x at 886.   The evidence establishes that Exclusive was not dilatory.

The timeline indicates that no unreasonable amount of time elapsed before Exclusive moved to amend to add J.S. Held:

- October 27, 2022: Exclusive learned of J.S. Held's existence.
- November 2, 2022: Exclusive alerted the Court and Defendants of its possible desire to join J.S. Held.
- November 30, 2022: Exclusive subpoenaed J.S. Held.
- December 14, 2022: J.S. Held acknowledged the subpoena and outlined its role in the events.

- January 30, 2023: J.S. Held responded to subpoena by producing documents.
- March 1, 2023: Exclusive moved to amend pleadings and add J.S. Held as a defendant.

Thus, Exclusive notified all parties it was contemplating adding J.S. Held six days after first learning of its existence. Twenty-eight days later, it subpoenaed documents from J.S. Held. Sixty-one days later, J.S. Held responded to the subpoena. Thirty days later, Exclusive filed its first motion to amend to add J.S. Held as a defendant. The Court finds that Exclusive acted with reasonable speed and diligence; the most sizable delay came not from Exclusive, but from J.S. Held in complying with the subpoena.

An additional "dilatory tactic" identified by Defendants is that Exclusive filed its motion to amend on the last day of the court-mandated deadline for such amendments. (See Doc. #108, pp. 22-23.) Complying with the schedule set forth in a court order simply cannot be considered dilatory. See e.g., S. Waste Sys., LLC v. City of Coral Springs, Fla., No. 06-61448-CIV, 2008 WL 11333808, at *2 (S.D. Fla. Apr. 1, 2008) (rejecting defendant's argument that a dilatory motive was evident because the motion was filed on the last day of deadline). This is particularly so here, where defendants initially proposed a longer (May 1, 2023) deadline for Exclusive to amend the pleadings than that adopted by the Magistrate Judge (March 1, 2023). (See Doc. #63, p. 29.) Additionally, Defendants filed motions to extend various deadlines during the pretrial proceedings (Docs. ## 28, 81) and, with one

exception (Doc. #29), both sides consented to extensions of time requested by an opposing party. (Docs. ## 50, 75, 81, 87.)

The Court finds that Exclusive has not utilized dilatory tactics, and its motion was timely. Thus, the Court agrees with the Magistrate Judge that plaintiff was not dilatory in seeking the amendment. (Doc. #103, pp. 5-6.) Therefore, Defendants' objection is overruled, and this factor weighs in favor of amendment and remand.

**(3)  Injury to Plaintiff**

The third factor to consider under <u>Hensgens</u> is whether plaintiff will be significantly injured if the amendment is not allowed. <u>Hensgens</u>, 833 F.2d at 1182. The Magistrate Judge found Plaintiff would be significantly injured if the motion was not granted. Defendants assert this was error.

Exclusive seeks to bring three alternative claims against J.S. Held: (1) Count V alleges a claim of tortious interference with Exclusive's relationship with NUFIC which caused NUFIC to wrongfully deny the insurance claims (Doc. #92-1, ¶ 284); (2) Count IX alleges a claim of negligence, asserting that J.S. Held "negligently interfered with Exclusive Group's ability to obtain payment for the Claims" (<u>Id.</u> at ¶ 383); and (3) Count XIII alleges of that J.S. Held "aided and abetted AIG and AIG CLAIMS in tortiously interfering with Exclusive Group's ability to obtain payment for the Claims." (<u>Id.</u> at ¶ 484). Thus, Exclusive claims

that J.S. Held either tortiously interfered with its contractual relationship with NUFIC, or negligently did so, or aided and abetted the other non-NUFIC defendants in doing so.

**(a)   Parallel Litigation**

The Magistrate Judge found that denying the amendment would require Plaintiff to maintain parallel litigation in state court. This would impose substantial and inappropriate burdens on Exclusive considering the similarity and overlap of the claims and the resulting unnecessary expense, waste of limited judicial resources, and risk of inconsistent outcomes. (Doc. #103, pp. 6-7.)

Parallel litigation in state court does not necessarily amount to a significant injury — even if it results in duplicative efforts on plaintiffs' part. Hickerson, 818 F. App'x at 886. For example, the Eleventh Circuit in a different context identified nine non-exclusive factors to consider in determining "whether to abstain from exercising jurisdiction over state-law claims in the face of parallel litigation in the state courts." Ameritas Variable Life Ins. Co. v. Roach, 411 F.3d 1328, 1331 (11th Cir. 2005). Here, all the claims are interrelated state-law claims. In this case, forcing Plaintiff to bear the extra cost and time to litigate interrelated and overlapping claims in two different forums places a significant burden on Plaintiff. It also adversely impacts the public's interest in conserving scarce

judicial resources and avoiding potentially inconsistent rulings. After *de novo* review, the Court agrees with the Magistrate Judge that denying the motion would result in parallel litigation which would significantly injure Plaintiff.

**(b)  No Fraudulent Joinder**

The Magistrate Judge also found that under Florida law both the tortious interference claim and the aiding and abetting tortious interference claim against J.S. Held were "possible," thus defeating the fraudulent joinder argument. (Doc. #103, pp. 9-14.)  The Magistrate Judge did not address the negligence claim. Defendants argue at some length that Plaintiff will not suffer significant injury because Florida law precludes all the claims Exclusive asserts against J.S Held.  (Doc. #108, pp. 12-20.) Defendants assert that the Magistrate Judge failed to consider the propriety of Plaintiff's claims under applicable Florida insurance law, that such claims are prohibited under Florida insurance law, and that it would therefore be futile to allow such an amendment. (Id.)  Defendants state that "Florida courts have consistently rejected attempts by plaintiffs to evade this statutory framework [Fla. Stat. § 624.155] by masquerading their bad faith claims under alternative common law tort labels."  (Id. at 14.)[6]  In a footnote,

---

[6] Along the same lines, Defendants assert that: "[t]he Remand Order is contrary to the letter and spirit of Florida's statutory insurance framework, because it allows Plaintiff to add improper third-party tort claims against J.S. Held."  (Doc. #108, p. 3); "The Remand Order fails to consider, much less assess, the

Defendants cite five cases in support of this proposition.   (Id. at 14-15, n.9.)

    After a *de* novo review, the Court agrees with the Magistrate Judge that the fraudulent joinder standard has not been satisfied in this case.   The tortious interference and aiding and abetting claims clearly satisfy the Florida pleading standard[7], so it is more than possible that a Florida state court would conclude Plaintiff stated causes of action.

**(c) Futility of Amendment**

    Defendants also argue that the Magistrate Judge improperly let only the fraudulent joinder test drive the outcome in the

---

propriety of Plaintiff's claims under applicable Florida insurance law" which "would not allow Plaintiff's unbundled insurance bad faith 'tort' claims against adjusters, administrators, investigators or other third parties retained to assist the insurer to proceed past the pleading stage." (Id. at 4); "Plaintiff's purported claims against J.S. Held are nothing more than run-of-the-mill insurance bad faith claims" which are being improperly directed "at the third parties that assisted its insurer's investigation." (Id. at 9); "Plaintiff's causes of action against J.S. Held, while dressed up with tort labels, are nothing more than an unbundled cause of action for statutory insurance bad faith.  *See* Fla. Stat. § 624.155." (Id. at 12); the allegations against J.S. Held "precisely fit within the contours of a Florida statutory insurance bad faith claim and Unfair Claims Settlement Practices Act.  See Fla. Stat. § 624.155(1)(a)1; Fla. Stat. § 626.9541(i)." (Id. at 14); and "the proper inquiry is whether an insured can circumvent Florida's established statutory insurance framework by asserting what are, in effect, insurance bad faith claims against third parties that participated in the claims handling process, before that insured has established the insurer's breach by failing to pay a covered claim." (Id. at 5.)

    [7] See footnote 9.

Order.  (Doc. #108, pp. 4, 12.)  The Court agrees that the Magistrate Judge's analysis ended too soon.  The futility of a proposed amendment is a relevant factor, so it is necessary to determine whether adding such claims would be futile.  As discussed earlier, a futility determination utilizes a significantly different legal standard than required to determine fraudulent joinder.  Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed.  Cockrell, 510 F.3d at 1310.  Futility requires a conclusion that as a matter of law an amended complaint would necessarily fail.  In re Gaddy, 977 F.3d at 1056.  For the reasons discussed below, after de novo review the Court finds that, except for the negligence claim, Defendants have not shown that the J.S. Held claims would be properly dismissed, either by a federal[8] or a Florida[9] court.

_____

[8] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation omitted). To be considered plausible, the allegations in the complaint must "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

[9] "Florida is a fact-pleading jurisdiction, not a notice-pleading jurisdiction." Graulau Maldonado v. Orange Cnty. Pub. Library Sys., 273 So. 3d 278, 279 (Fla 5th DCA 2019) (citation omitted).  "To survive a motion to dismiss, a complaint must allege a prima facie case. In evaluating a motion to dismiss, the court confines its consideration to the four corners of the complaint and must accept all well-pleaded allegations as true." Alvarez v. E & A Produce Corp., 708 So. 2d 997, 999 (Fla. 3d DCA 1998). "Whether a prima facie case has been pled depends on the sufficiency of the plaintiff's allegations of fact, excluding the bare conclusions of the plaintiff." Id. at 999-1000.  See also

Therefore, amendment to add these two claims is not precluded as futile.

Defendants' principal argument describes all of Exclusive's claims against J.S. Held as an improper "unbundled" statutory bad faith claim against an insurer pursuant to Fla. Stat. § 624.155. The Court is not convinced.

In Florida,

> . . . a claim for bad faith pursuant to section 624.155(1)(b)1 is founded upon the obligation of the insurer to pay when all conditions under the policy would require an insurer exercising good faith and fair dealing towards its insured to pay. This obligation on the part of an insurer requires the insurer to timely evaluate and pay benefits owed on the insurance policy. We hasten to point out that the denial of payment does not mean an insurer is guilty of bad faith as a matter of law. The insurer has a right to deny claims that it in good faith believes are not owed on a policy. Even when it is later determined by a court or arbitration that the insurer's denial was mistaken, there is no cause of action if the denial was in good faith. Good-faith or bad-faith decisions depend upon various attendant circumstances and usually are issues of fact to be determined by a fact-finder.

---

Suzmar, LLC v. First Nat'l Bank of S. Miami, __ So. 3d __, 2023 WL 5597394, *1 (Fla. 3d DCA Aug. 30, 2023). "Those allegations are then reviewed in light of the applicable substantive law to determine the existence of a cause of action." Age of Empire, Inc. v. Ocean Two Condo. Ass'n, Inc., 367 So. 3d 1278, 1279–80 (Fla. 3d DCA 2023) (citation omitted). "A motion to dismiss tests the legal sufficiency of the complaint and does not determine factual issues. [] To state a cause of action, a complaint must allege sufficient ultimate facts to show that the pleader is entitled to relief." TR Inv'r, LLC v. Manatee Cnty., 355 So. 3d 1004, 1010 (Fla. 2d DCA 2023) (citations omitted).

Vest v. Travelers Ins. Co., 753 So. 2d 1270, 1275 (Fla. 2000).
"[T]he duty of good faith involves diligence and care in the
investigation and evaluation of the claim against the insured,
negligence is relevant to the question of good faith." Boston Old
Colony Ins. Co. v. Gutierrez, 386 So. 2d 783, 785 (Fla. 1980).
Before asserting a bad faith claim under § 624.155, plaintiff must
establish a prior determination of the existence of liability and
the extent of the insured's damages. Blanchard v. State Farm Mut.
Auto. Ins. Co., 575 So. 2d 1289, 1291 (Fla. 1991); Vest, 753 So.
2d at 1276 ("We continue to hold in accord with Blanchard that
bringing a cause of action in court for violation of section
624.155(1)(b)1 is premature until there is a determination of
liability and extent of damages owed on the first-party insurance
contract.")  First-party bad faith claims are not considered to
be willful torts but are "purely a creature of statute that did
not previously exist at common law." Citizens Prop. Ins. Corp.
v. Perdido Sun Condo. Ass'n, Inc., 164 So. 3d 663, 667 (Fla. 2015).

The claims against J.S. Held are not claims against an
"insurer" within the meaning of Fla. Stat. § 624.155.  None of the
cases cited by Defendants in their footnote discussed "unbundled"
bad faith claims or held that Fla. Stat. § 624.155 provided some
sort of immunity to a third party whose wrongful conduct enabled
an insurer to engage in its bad faith conduct.

**(i)  Tortious Interference by J.S. Held**

The Florida Supreme Court has recognized a cause of action for tortious interference with a business relationship.  Stone v. Wall, 734 So. 2d 1038, 1044 (Fla. 1999) (citations omitted).  "Four elements are required to establish tortious interference with a contractual or business relationship: (1) the existence of a business relationship or contract; (2) knowledge of the business relationship or contract on the part of the defendant; (3) an intentional and unjustified interference with the business relationship or procurement of the contract's breach; and (4) damage to the plaintiff as a result of the interference."  Howard v. Murray, 184 So. 3d 1155, 1166 (Fla. 1st DCA 2015) (citations omitted).

Count V alleges a claim of tortious interference with Exclusive's relationship with NUFIC which caused NUFIC to wrongfully deny the insurance claims. (Doc. #92-1, ¶ 284.)  Count V alleges all four elements of a tortious interference claim. (Id. at ¶¶ 273-275, 285.)  These allegations are sufficient to satisfy the Florida pleading standard.

Contrary to Defendants' arguments, Florida courts have recognized that, in insurance cases, "[a]n agent is individually liable to a third person for the agent's tortious conduct."  Liberty Surplus Ins. Corp. v. First Indem. Ins. Servs., Inc., 31 So. 3d 852, 856 (Fla. 4th DCA 2010) (citation omitted).  Florida law

attaches liability to an insurer's agent not "based upon the existence of any contractual relationship between the agent and a principal but upon the common law obligation that every person must so reasonably act or use that which he or she controls as not to harm another." Sussman v. First Fin. Title Co. of Fla., 793 So. 2d 1066, 1069 (Fla. 4th DCA 2001). "An agent or broker also has a duty of reasonable care [to a customer] in rendering advice on insurance matters." Wachovia Ins. Servs., Inc. v. Toomey, 994 So. 2d 980, 990 n.4 (Fla. 2008) (quoting 5 Florida Torts § 150.24 (2007)). Ultimately, "[a]n intermediary may be liable to an insured on both tort and contract theories." Douglas R. Richmond, Insurance Agent and Broker Liability, 40 Tort Trial & Ins. Prac. L.J. 1, 10 (2004).

### (ii)   Aiding and Abetting

Count XIII of the TAC alleges that J.S. Held "aided and abetted AIG and AIG CLAIMS in tortiously interfering with Exclusive Group's ability to obtain payment for the Claims." (Doc. #92-1, ¶ 484).

Generally, to state a claim for aiding and abetting a tort plaintiff must allege: "(1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying violation by the alleged aider and abetter; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor." Taubenfeld v. Lasko, 324 So. 3d 529, 543–44

(Fla. 4th DCA 2021) (citing <u>Lawrence v. Bank of Am., N.A.</u>, 455 F. App'x 904, 906 (11th Cir. 2012) (applying Florida law)). Thus, a cause of action for aiding and abetting tortious interference requires a plaintiff to allege: 1) the existence of the underlying tortious interference on the part of a primary wrongdoer; 2) knowledge of the tortious interference by the alleged aider and abettor; and 3) the aider and abettor's substantial assistance or encouragement of the wrongdoing. <u>Logan v. Morgan, Lewis & Bockius LLP</u>, 350 So. 3d 404, 410 (Fla. 2d DCA 2022). The allegations in Count XIII of the TAC (Doc. #92-1, ¶¶ 471, 473-474, 475, 480) are sufficient to satisfy the Florida pleading standard.

**(iii)   Negligence Claim**

Count IX alleges a claim of negligence, asserting that J.S. Held "negligently interfered with Exclusive Group's ability to obtain payment for the Claims" (<u>Id.</u> at ¶ 383). The Magistrate Judge's Order did not discuss the negligence claim. As noted above, tortious interference requires an intentional and unjustified interference with the business relationship or procurement of the contract's breach. <u>Howard</u>, 184 So. 3d at 1166. Florida does not recognize a claim for negligent tortious interference with a contract or business relationship. <u>Florida Power & Light Co. v. Fleitas</u>, 488 So. 2d 148, 151-52 (Fla. 3d DCA 1986). Since this count does not state a claim upon which relief may be granted, Count IX of the TAC will be stricken.

**(4)    Equitable Factors**

Finally, a district court must balance the equities which may be involved in the case.  *Hensgens*, 833 F.2d at 1182.  Both sides essentially argue that they have a "right" to proceed in the forum of their choice, with Plaintiff choosing the state forum and Defendants choosing the federal forum.  Neither is wrong.  It has long been the law that "absent fraudulent joinder, plaintiff has the right to select the forum, to elect whether to sue joint tortfeasors and to prosecute his own suit in his own way to a final determination." *Parks v. The New York Times Co.*, 308 F.2d 474, 478 (5th Cir. 1962).[10]  On the other hand, the federal removal statute specifically gives a defendant the ability to remove a case to federal court under certain circumstances.  28 U.S.C. § 1441. Given the Court's prior findings that Plaintiff was not dilatory and has alleged two causes of action which satisfy the Florida pleading standards, the Court concludes that the equitable factor favors Plaintiff.

After analyzing all four of the *Hensgens* factors *de novo*, the Court concludes, with the exception of Count XIII, the motion for leave to file a Third Amended Complaint should be granted and the case remanded to state court.

---

[10] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Accordingly, it is now

**ORDERED:**

1. Defendants' Objections to Magistrate Judge's Order (Doc. #108) is **SUSTAINED IN PART AND OVERRULED IN PART.**

2. Plaintiff's Motion to Amend (Doc. #92) is **GRANTED IN PART AND DENIED IN PART.** Count IX of the Third Amended Complaint (Doc. #92-1) is stricken for failure to state a claim upon which relief may be granted. The Third Amended Complaint, as thus modified, shall be deemed filed on the date of this Opinion and Order, and becomes the operative pleading in this case.

3. The case is remanded to the Collier County Twentieth Judicial Circuit Court and the Clerk of the Court shall transmit a certified copy of this Order to the Clerk of that Court. The Clerk shall terminate all pending motions and close the file.

**DONE and ORDERED** at Fort Myers, Florida, this ___12th___ day of December 2023.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record

- 35 -